THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCO MEDINA-SALAS, | ) | 4:05CV3211 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| TYSON FRESH MEATS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Marco Medina-Salas brings this employment discrimination lawsuit against his former employer, Tyson Fresh Meats, Inc., alleging age, race, and national origin discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; 42 U.S.C. § 1981; and Title VII, 42 U.S.C. §§ 2000e, et seq., respectively. He also claims that Tyson violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, by assigning absenteeism points to him for absences he claims were the result of a serious health condition. Finally, the plaintiff asserts that he was wrongfully discharged in violation of Nebraska public policy in retaliation for opposing Tyson's allegedly unlawful safety practices and for exercising his rights under the Occupational Safety and Health Act, 29 U.S.C. §§ 651, et seq.

Tyson has filed a motion for summary judgment on all of the plaintiff's claims. For the reasons explained below, I shall grant Tyson's motion in part and dismiss one of the plaintiff's claims without prejudice.

# I. FACTS

## A. Plaintiff's Jobs With Tyson

1. During November 2002, Tyson recruited plaintiff Marco Medina-Salas, who is Hispanic, from Texas to work in Tyson's Lexington, Nebraska, meat-packing plant. (Complaint, Filing 1 ¶ 5; Pl.'s Dep. 58:1-60:17.)[1]

2. Plaintiff began his employment at Tyson in the Slaughter Division on the Kill Floor as a "re-knocker," which involved ensuring that the beef carried on the production line remained unconscious. (Pl.'s Dep. 73:17-75:11.)

3. Tyson job-performance records indicate that during his employment on the Kill Floor, Plaintiff was disciplined at various times. (Pl.'s Dep. 80:6-11, 81:11-83:6, 101:4-13, 102:1-9, Exs. 5 & 6.) Plaintiff admits that he was disciplined on January 9 and 10, 2003, for allegedly "failing to reknock beef"; on February 27, 2003, for "letting live beef go by"; and on March 25, 2003, for "not performing the live audits properly." (Pl.'s Dep. Ex. 16, Requests for Admissions, at 12-13.)

4. Plaintiff worked on the Kill Floor from November 2002 to June 2003, and was then promoted to the Maintenance Department in the Slaughter Division as a Mechanic. (Pl.'s Dep. 101:14-19.) Plaintiff continued to work in the Maintenance Department position until his termination in January 2004. (Pl.'s Dep. 7:16-18, 101:4-24, 121:20-122:3.) Plaintiff was 49 years of age when his employment with Tyson was terminated. (Complaint, Filing 1 ¶ 10.)

---

[1] Plaintiff's deposition may be found at Filing 48-4.

## B. Plaintiff's Internal Employment Applications

5. Tyson maintained a seniority policy during the time Plaintiff was employed. (Pl.'s Dep. 108:10-15, Ex. 4.) Under this policy, all employees must remain employees for a 90-day probationary period before applying for any other jobs in the plant. (Pl.'s Dep. 182:12-18, Ex. 4.)

6. Certain positions in Tyson's Lexington plant—like the Mechanic position Plaintiff ultimately obtained in the Maintenance Department—require employees to undergo a bidding process to qualify for them. (Pl.'s Dep. 108:10-23, 128:7-13, Ex. 4 § 8; Aff. Suzann Ekberg ¶ 4.[2]) Pursuant to the bidding process, which is set forth in Tyson's Seniority Policy, employees with higher departmental seniority qualify for open positions ahead of employees who work outside the department. (Pl.'s Dep. 108:10-109:7, 128:3-13, Ex. 4 § 8.) If no seniority exists within a department, employees with higher division seniority qualify for the job bid first. (Pl.'s Dep. 108:10-109:7, Ex. 4 § 8.)

7. The Kill Floor and Maintenance Departments are separate departments within the Slaughter Division of Tyson's Lexington plant. (Pl.'s Dep. 72:21-73:16, Ex. 4 § 3.) Plaintiff applied for a position in the Maintenance Department three times before ultimately winning the bid for an open Mechanic position in June 2003. (Pl.'s Dep. 128:3-138:25.) On each of the three occasions that Plaintiff was unsuccessful in obtaining a Maintenance Department position, a person with higher seniority had bid for, and obtained, the position. (Ekberg Aff. ¶¶ 10-12; Pl.'s Dep. 133:23-134:13, 135:14-25, 137:4-138:3.)

8. In addition to positions in the Maintenance Department, Plaintiff applied for three Quality Assurance positions and a Storeroom Clerk position. (Pl.'s Dep.

---

[2]The affidavit of Suzann Ekberg may be found at Filing 42-2.

148:22-161:15, 139:5-9.) Plaintiff was not selected for any of these positions. Of the eight employees who were awarded the Quality Assurance positions, three were Hispanic. The Storeroom Clerk position for which Plaintiff applied was also filled by a Hispanic individual. Notes from Plaintiff's interviews for the Quality Assurance positions indicate that he was not hired because he had many "write up[s] for job performance this year," he had "sluggish speech," and he was "hard to understand." Similarly, Tyson records indicate that Plaintiff was not hired for the Storeroom Clerk position because he "lacks good communication skill." (Pl.'s Dep. 139:5-9, 148:22-149:9, 150:17-151:3, 156:24-158:19, 159:22-161:15 & Exs. 8-11; Ekberg Aff. ¶¶ 13, 15, 18-21, 25-28, 31, 33, 35 & Exs. G, J, K, L, S, T, U, Z, AA, CC.)

9. While Plaintiff claims that "the better jobs are mostly held by white younger individuals" at Tyson, Plaintiff has failed to present any evidence to support this statement. (Pl.'s Decl., Filing 62 ¶ 11.) With regard to the positions for which Plaintiff applied, the court is unable to find any evidence of the applicants' ages. (Filing Ekberg Aff. ¶¶ 6-36 & Exs. B-DD.)

## C. Plaintiff's Termination

10. While Plaintiff was employed there, Tyson maintained an attendance policy. (Pl.'s Dep. 204:23-205:4, 206:14-208:1, Exs. 13 & 14.) Plaintiff received copies of the attendance policy and was provided training on its application. (Pl.'s Dep. 202:14-203:20, 204:23-205:4, 206:14-208, Ex. 12.) Under the attendance policy, three points were assigned for absences without proper notification; one point was assigned for tardiness to work without proper notification; one point was assigned for an absence with proper notification; and no points were assigned for excused absences (i.e., vacation; work-related illness or injury supported by health-care provider; prearranged absences; release from work due to illness, emergency, or lack of work; FMLA

absences). (Pl.'s Dep. Exs. 13 & 14.) Proper notification was not considered given if an employee called in an absence less than 30 minutes before his or her shift was scheduled to begin. (Pl.'s Dep. 204:12-16, Exs. 13 & 14; Ekberg Aff. ¶ 43.) If proper notification was given, but the absence was not excused in advance, and there was no other documented reason for the absence to be excused, one point was assigned to the employee. (Pl.'s Dep. 205:14-20, Exs. 13 & 14; Ekberg Aff. ¶ 43.)

11. When Plaintiff was promoted to the Maintenance Department, he was provided with a specific telephone number to call, known as the Maintenance Hotline, in the event he was going to be absent. (Pl.'s Dep. 203:11-204:16, Ex. 12, at TFM 1272.)

12. Tyson's attendance policy provided for notification of an employee's point totals and discharge from employment for accumulating 14 or more points in one year:

   **Attendance Notification of Points**
   - 3 points but less than 6   Attendance Notification
   - 6 points but less than 10   Attendance Notification
   - 10 points but less than 14   Final Attendance Notification
   - 14 points or more   Discharge

   (Pl.'s Dep. Exs. 13 & 14; Ekberg Aff. ¶ 43.)

13. Prior to January 4, 2004, Plaintiff was absent from, or tardy to, work at Tyson 33 times in a 12-month period, resulting in 13 points under the attendance policy. On or about March 11, 2003, Plaintiff received a written warning for having five attendance points; on or about April 22, 2003, he was warned for having six points; and on or about July 24, 2003, he was told he had accumulated ten points. (Pl.'s Dep. 229:14-231:18, Exs. 17 & 18; Ekberg Aff.

¶ 44, Ex. LL.) Plaintiff did not contest or file a grievance regarding any of the warnings he received, nor did he contest or grieve the points Tyson assigned to him. (Pl.'s Dep. 231:19-232:10.)

14. On January 4, 2004, Plaintiff was absent from work for the alleged reason that he needed to stay home to care for his ill son. Tyson did not receive a call from Plaintiff on the Maintenance Hotline to report his absence. (Pl.'s Dep. 235:3-241:20.) Plaintiff admits he did not call the Maintenance Hotline to report his absence that day, but he claims to have called into work using a telephone number an unidentified supervisor gave him in November 2003. The number Plaintiff called went unanswered, and he did not leave a message or call another number regarding his absence. (Pl.'s Dep. 232:17-239:20.)

15. Pursuant to Tyson's attendance policy, Tyson assigned Plaintiff three absenteeism points for his January 4 absence, giving him a total of 16 points in a 12-month period. Even if Plaintiff had provided Tyson with proper notification of his absence, Plaintiff admits that he would have been assigned one point, resulting in a total of 14 points and discharge under the attendance policy. (Pl.'s Dep. 239:21-240:15, Exs. 13, 14, 17; Ekberg Aff. ¶ 47.)

16. Plaintiff either does not dispute that he was absent on the occasions that Tyson assigned points to him, or he does not recall whether or not he was absent. He admits that when he was assigned one or more points for his absences, he did not provide any doctor's notes or medical certifications regarding his absence or medical condition. (Pl.'s Dep. 202:7-11, 210:14-212:8, 218:1-8, Ex. 16.)

17. Records kept by Tyson regarding Plaintiff's discharge state that Plaintiff violated the company's absenteeism policy and that "attendance" was the reason for his termination. (Filing 44-8, Ex. NN.)

### D. Plaintiff's Alleged Complaints About OSHA Violations

18. Plaintiff claims that shortly after he began his employment with Tyson in November 2002, he began complaining about various OSHA safety violations. (Pl.'s Dep. 163:3-165:17.) While unable to pinpoint a specific OSHA requirement that Tyson had violated, Plaintiff testified that he complained about workplace dangers that existed as a result of the production line speed, the durability of the production line equipment, the live beef that was present in the building, and the unprotected nature of certain hot water pipes. (Pl.'s Dep. 163:3-165:11.)

19. Plaintiff does not recall the dates he complained about any alleged OSHA violations, but he contends that he last complained internally to supervisors in September 2003 regarding the sturdiness of certain production equipment and the risk it posed to employees. He also claims that he threatened to report safety issues to OSHA at that time. (Pl.'s Dep. 165:12-168:10.)

20. Plaintiff contends that, on several occasions, he contacted OSHA officials and various other state and federal offices about perceived safety violations, and that he did so verbally over the telephone and by e-mail over a computer that he no longer possesses. There is no documentary evidence of such complaints and Plaintiff cannot identify any specific OSHA officials with whom he spoke. (Pl.'s Dep. 168:6-20, 170:5-175:8.)

### E. Plaintiff's Charge of Discrimination

21. Plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission and the Equal Employment Commission on or about May 12, 2004, alleging age and national origin discrimination and retaliation as a result of his safety complaints. (Pl.'s Dep. 257:24-258:16, Ex. 19.) A right-to-sue

letter was mailed to the plaintiff on May 26, 2005. (Complaint, Filing 1 ¶ 4; Answer, Filing 21¶ 4.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." Id. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence

>of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

This is a discrimination case, and the Court of Appeals for the Eighth Circuit has often noted that "summary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000) (citing cases). Nonetheless, summary judgment should be granted, even in a discrimination case, if the plaintiff has failed to present "any significant probative evidence tending to support the complaint," or has failed to "make a sufficient showing on every essential element of its claim on which it bears the burden of proof." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 718 (8th Cir. 2000) (internal quotations & citations omitted).

"[T]he focus of inquiry at the summary judgment stage 'always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of [the protected characteristic].'" Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1018 (8th Cir. 2005) (quoting Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

**B.  Discrimination Based on National Origin, Race, and Age**

Plaintiff claims that Tyson violated Title VII, the ADEA[3], and 42 U.S.C. § 1981 by subjecting him to harassment[4], refusing to promote him, and ultimately terminating his employment.  (Filing 67, Order on Final Pretrial Conf. at 2-3.) Because Plaintiff relies upon indirect evidence of discrimination, his Title VII discrimination claim based on national origin, his 42 U.S.C. § 1981 discrimination claim based on race, and his age discrimination claim under the ADEA are subject to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Lee v. Rheem Mfg. Co., 432 F.3d 849, 854 (8th Cir. 2005) (applying McDonnell Douglas to age discrimination claim); Kincaid v. City of Omaha, 378 F.3d 799, 806 (8th Cir. 2004) (stating that McDonnell Douglas analysis applies to Title VII and § 1981 claims).

To survive summary judgment under McDonnell Douglas, "the plaintiff must establish a prima facie case of employment discrimination.  If established, the employer may advance a legitimate, nondiscriminatory reason for the employee's discharge.  The burden of production then returns to the plaintiff to show that the employer's reason is a pretext for [age, racial, or national origin] discrimination." Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006) (internal citations omitted).  To succeed at the pretext stage, the plaintiff "must prove that the prohibited reason was a determinative factor in [the employer's] decision to

---

[3]The ADEA prohibits employers from discharging employees on account of age if they are 40 years of age or older.  29 U.S.C. §§ 623(a)(1) & 631(a).

[4]While the Order on Final Pretrial Conference (filing 67) includes the word "harassment" when describing "adverse employment actions" Plaintiff suffered, I do not construe the Order as including a claim that Plaintiff was subject to racial discrimination based on a hostile work environment.  Tatum v. City of Berkeley, 408 F.3d 543, 550 (8th Cir. 2005) (listing elements of hostile work environment claim based on race).

terminate." Jones v. United Parcel Svc., Inc., ___ F.3d ___, 2006 WL 2404041, at *6 (8th Cir. Aug. 22, 2006).

### 1. Termination Claim

To establish a prima facie case of employment discrimination, the plaintiff must show that (1) he was a member of a protected group or class; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) there are facts that permit an inference of discrimination. Canady, 440 F.3d at 1034; Johnson v. AT & T Corp., 422 F.3d 756, 761 (8th Cir. 2005). The plaintiff can establish the fourth element of his prima facie case by producing facts that similarly situated employees who do not possess the protected characteristic (age, race, national origin) were treated differently.

Tyson admits that Plaintiff belongs to a protected group or class and suffered an adverse employment action when he was terminated from his employment. However, Tyson argues that Plaintiff has failed to establish both that he was meeting the legitimate expectations of his employer when he was terminated and that Tyson treated Plaintiff differently than similarly situated individuals who were not in the same protected class. (Filing 41, Br. Supp. Def.'s Mot. Summ. J. at 16.) I agree.

It is undisputed that Tyson maintained an attendance policy, of which Plaintiff received copies and upon which he was provided training. Prior to his termination date of January 4, 2004, Plaintiff was absent from, or tardy to, work 33 times in a 12-month period, resulting in 13 points under Tyson's attendance policy. The evidence establishes that Plaintiff was warned three times about his accumulation of attendance points prior to his termination, and that Plaintiff did not contest or file a grievance regarding any of the warnings or points he received. Plaintiff admits that even if he had provided Tyson with proper notification of his absence on January 4, 2004, he would have been assigned one point, resulting in a total of 14 points and discharge

11

under the attendance policy. Thus, Plaintiff was clearly not meeting the legitimate attendance requirements of Tyson before and when he was terminated.

Further, Plaintiff has failed to present any evidence whatsoever establishing the fourth element of his prima facie case—that is, facts that permit an inference of discrimination, such as similarly situated employees who were not Hispanic or were younger than Plaintiff who were treated differently by Tyson for violating the company's attendance policy.[5]

Finally, even if Plaintiff could establish a prima facie case of discrimination, Tyson has affirmatively shown that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment—exceeding the acceptable number of attendance points in violation of known Tyson policy. In response, Plaintiff has not presented any probative evidence that Tyson's alleged reason for terminating him was a pretext for unlawful discrimination—that is, that Plaintiff's nationality, race, or age were determinative factors in Tyson's decision to terminate him. Jones, 2006 WL 2404041, at *6 (to succeed at pretext stage, plaintiff must prove that prohibited reason was a determinative factor in employer's decision to terminate); Johnson, 422 F.3d at 762 (employee's violation of company policy is legitimate reason for subsequent termination when employee agreed to abide by code of conduct when he was hired and when employer honestly believed plaintiff had violated company policy). Because there is insufficient evidence in this case to establish that Plaintiff's discharge occurred in circumstances that permit an inference of discrimination, summary judgment must be granted in favor of Tyson on this claim.

---

[5]In response to defense counsel's inquiries regarding other employees who had similar records of absenteeism but were not terminated, Plaintiff stated only that a Doug Shaffer "went out for a long time, they came back and get the job." (Pl.'s Dep. 252.) Plaintiff presented no evidence that Mr. Shaffer was similarly situated to Plaintiff in any way, that Shaffer did not possess the protected characteristic (age, race, national origin), or that Shaffer was treated differently than Plaintiff.

### **2. Failure-to-Promote Claim**

Tyson first argues that Plaintiff's failure-to-promote claim based on his age, race, and national origin are time-barred because Plaintiff's NEOC/EEOC charge of discrimination did not include this claim. (Filing 41, Br. Supp. Def.'s Mot. Summ. J. at 11-13.) Plaintiff counters that Tyson's "continuing practice of denying promotions or equal job opportunities to [H]ispanic individuals" makes Plaintiff's failure-to-promote claim timely. (Filing 61, Pl.'s Br. Opp'n Mot. Summ. J. at 17.) Rather than analyze the intricacies of the continuing-violation doctrine as applied to the facts of this case, see National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Tademe v. Saint Cloud State Univ., 328 F.3d 982 (8th Cir. 2003), I shall assume for purposes of Tyson's summary judgment motion that Plaintiff's failure-to-promote claim was timely filed.

In a failure-to-promote case, the plaintiff must "demonstrate a prima facie case of discrimination by showing that he is a member of a protected class, that he sought and was denied a promotion for which he was qualified, and that the promotion was given to another person who is not a member of the protected class." Turner v. Honeywell Fed. Mfg. & Technologies, LLC, 336 F.3d 716, 720 (8th Cir. 2003) (internal punctuation & citation omitted).

Plaintiff's failure-to-promote claim based on age fails because the court was unable to find (and the plaintiff has failed to point out) any evidence that the individuals who were hired for the Mechanic, Quality Assurance, and Storeroom Clerk positions were younger than Plaintiff. Plaintiff's claim also fails as to those jobs that were filled by Hispanic individuals (i.e., three of the eight Quality Assurance positions that were awarded when Plaintiff applied for them). In both instances, the plaintiff has not established that the promotions went to persons who were <u>not</u> over 40 or Hispanic.

As to Plaintiff's failure-to-promote claim based on race and national origin for those positions filled by non-Hispanic individuals, I shall assume that Plaintiff has established a prima facie case of discrimination. Tyson, then, has the burden to rebut this presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for its actions. Turner, 336 F.3d at 723. It has done so.

The evidence establishes that Plaintiff applied for a position in Tyson's Maintenance Department three times before ultimately winning the bid for an open Mechanic position in June 2003. Tyson, through its Human Resource Manager, has testified by affidavit and supporting exhibits that on each of the three occasions that Plaintiff was unsuccessful in obtaining a Maintenance Department position, a person with higher seniority bid for, and obtained, those positions pursuant to Tyson's Seniority Policy. With regard to the Quality Assurance positions for which Plaintiff applied and did not get, Tyson documents reflect that Plaintiff was not hired because he had many "write up[s] for job performance this year," had "sluggish speech," and was "hard to understand." (Ekberg Aff. Exs. G, K, L, T, AA, CC.)

Because Tyson rebutted the presumption of discrimination, Plaintiff must "present evidence of discrimination sufficient to create a question for the jury." Turner, 336 F.3d at 723. While Plaintiff broadly proclaims that "the better jobs are mostly held by white younger individuals" at Tyson, Plaintiff has failed to present any evidence to support this statement or to show that Tyson's decisions not to promote Plaintiff were discriminatory in any way. (Pl.'s Decl., Filing 62 ¶ 11.) See Turner, 336 F.3d at 723 (because plaintiff failed to produce any material evidence affirmatively demonstrating that employer's justification for not promoting plaintiff was false and that employer unlawfully discriminated against plaintiff on basis of race, summary judgment in favor of employer was correctly granted).

Thus, summary judgment must be granted in favor of Tyson on Plaintiff's failure-to-promote claim.

## C.  FMLA Claim

"A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave."  Woods v. DaimlerChrysler Corp., 409 F.3d 984, (8th Cir. 2005).  Specifically,

> In order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he may need FMLA leave. Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000) (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir.1999)); 29 C.F.R. §§ 825.302(c), 825.303(b). Although the employee need not name the statute, Thorson, 205 F.3d at 381, he must provide information to suggest that his health condition could be serious. Collins v. NTN-Bower Corp., 272 F.3d 1006, 1009 (7th Cir. 2001). Employees thus have an "affirmative duty to indicate both the need and the reason for the leave," and must let employers know when they anticipate returning to their position. Sanders v. May Dep't Stores Co., 315 F.3d 940, 944 (8th Cir.2003); 29 C.F.R. § 825.302(c).
>
> The FMLA also requires that an employee's notice be timely in order for his leave to be covered by the Act. The statute demands "such notice as is practicable" unless the need for medical leave is foreseeable, when thirty days advance notice must be given. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.303(a).  As soon as practicable means "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). At a minimum, notice is to be given within "one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible."  Id. § 825.303(a).

Woods, 409 F.3d at 990-91.

Plaintiff Medina-Salas admits that when Tyson assigned him one or more points for his absences pursuant to company policy, he did not provide any doctor's notes or medical certifications regarding his absence or medical condition.  (Pl.'s

Dep. 202:7-11, 210:14-212:8, 218:1-8, Ex. 16.) Even if Plaintiff had a serious health condition within the meaning of the FMLA, he has offered no proof that he informed Tyson of any need to be absent because of his alleged condition, nor has he pointed to any medical records or documentation to show that he in fact was receiving continuing medical treatment for such a condition on the dates he was absent. Simply indicating to an employer that the plaintiff is "sick" or "ill" is inadequate notice under the FMLA because it offers no information to suggest that the plaintiff is suffering from a serious health condition or when the plaintiff would return to work. Woods, 409 F.3d at 991.

Thus, Plaintiff has failed to establish a prima facie case under the FMLA, and summary judgment must be granted in favor of Tyson on this claim. See Woods, 409 F.3d 984 (affirming grant of summary judgment in favor of employer in case where plaintiff was terminated for unexcused absences from work and then claimed in litigation that termination violated the FMLA; plaintiff failed to make out a prima facie case under the FMLA because he failed to give adequate and timely notice that he needed FMLA leave for a qualifying medical condition); Bailey v. Amsted Indus. Inc., 172 F.3d 1041 (8th Cir. 1999) (affirming judgment for employer on FMLA claim when employee was discharged for unexcused absences and "[w]ith only a few exceptions, . . . he made no showing that his unexcused absences were due to his alleged disability or serious health condition"; FMLA notice requirements not satisfied by virtue of employer's knowledge of employee's serious medical conditions, that employee was under medical care, and that employee needed to miss work from time to time); Collins v. NTN-Bower Corp., 272 F.3d 1006 (7th Cir. 2001) (affirming summary judgment in favor of employer when plaintiff claimed discharge violated FMLA, but simply called in "sick" without other notice to employer; "notice is essential even for emergencies . . . . employers still are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work") (case cited and relied on by Eighth Circuit Court of Appeals in Woods, 409 F.3d 984).

16

**D. Public Policy Claim**

Plaintiff's final claim is that Tyson violated state law by wrongfully discharging him for opposing allegedly unlawful safety practices at Tyson, in violation of Nebraska public policy codified at Neb. Rev. Stat. § 48-443(4) (LexisNexis 2002), which prohibits the discharge of an employee "because he or she makes any oral or written complaint to the safety committee or any governmental agency having regulatory responsibility for occupational safety and health."

It is clear that the Nebraska Supreme Court recognizes a public policy exception to the at-will employment doctrine, allowing an employee to claim damages for wrongful discharge when the motivation for the discharge contravenes "a very clear mandate of public policy." Wendeln v. The Beatrice Manor, Inc., 712 N.W.2d 226, 238 (Neb. 2006). However, the parties have not cited, nor has the court found, any Nebraska case law[6] indicating whether the Nebraska Supreme Court would recognize a public-policy exception to the employment-at-will doctrine to

---

[6]For example, Nebraska courts have found public policy violations to be exceptions to the at-will employment doctrine where "employees . . . are discharged because they refused to commit an act that violates the criminal laws of the state." Simonsen v. Hendricks Sodding & Landscaping Inc., 558 N.W.2d 825, 829 (Neb. Ct. App. 1997) (employee who refused to operate truck with defective brakes in violation of state law could not be discharged for refusing to commit an act that violates criminal laws). In addition, the Nebraska Supreme Court has found that an action for wrongful discharge lies when an at-will employee, in good faith and upon reasonable cause, reports his employer's suspected violation of the criminal code. Schriner v. Meginnis Ford Co., 421 N.W.2d 755, 756 (Neb. 1988). An exception also has been found to exist when employees are terminated for exercising their substantive rights under Nebraska's Workers' Compensation Act. Jackson v. Morris Communications Corp., 657 N.W.2d 634, 640 (Neb. 2003). Finally, a public policy has been found to exist when a Nebraska statute mandated that a nurse report abuse taking place in a nursing home. Wendeln v. The Beatrice Manor, Inc., 712 N.W.2d 226 (Neb. 2006).

allow a cause of action for retaliatory discharge when an employee is fired for making health and safety complaints to a federal entity about his or her workplace.[7]

Under these circumstances, the prudent course of action is to dismiss Plaintiff's state-law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3), which provides that a federal district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction," as I have in this case. "In most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state claims are dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Accordingly, I shall dismiss Plaintiff's state-law public-policy claim without prejudice.

IT IS ORDERED:

1. The defendant's motion for summary judgment (filing 40) is granted as to his claims alleging age, race, and national origin discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634; 42 U.S.C. § 1981; and Title VII, 42 U.S.C. §§ 2000e, et seq., and as to his claim alleging a violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654;

2. The defendant's motion for summary judgment (filing 40) is denied as to Plaintiff's claim that he was wrongfully discharged in violation of

---

[7] Plaintiff has submitted no evidence, other than his own testimony, that he submitted oral and written complaints about health and safety concerns at Tyson to management and to OSHA.

   Nebraska public policy, as this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3);

3. This case is dismissed in its entirety;

4. The defendant's motion in limine (filing 64) is denied as moot; and

5. Judgment shall be entered by separate document.

September 20, 2006.

         BY THE COURT:
         s/ *Richard G. Kopf*
         United States District Judge